## Jacob C. Slemmer, William Slemmer and Charles Slemmer's Appeal.

1. One partner may at any time withdraw and cause a technical dissolution of the firm, subject to liability to his partners if the act be wrongful.

2. One of a firm of oil refiners purchased in his own name a lot on which to erect a refinery, the firm took a lease of it from him and erected buildings; they could not afterwards claim that the lot should be treated as firm property.

3. The maxim, *vigilantibus non dormientibus leges subveniunt* applies in equity as well as at law.

4. On the subject of dissolving partnerships a large discretion is vested in courts of equity. Dissolution will not be decreed on slight grounds.

5. Where a partnership can no longer be continued with comfort and advantage to all concerned a dissolution will be decreed.

6. In making such decree, the court will consider not only the express contract of partnership, but also the duties and obligations implied in every partnership contract.

7. Where a valuable business has grown up by the labors and contributions of all, the court should be careful to preserve it, and put all the partners on a fair and equal footing to compete for it. .

8. To appoint a receiver, direct a sale of the whole, and a winding-up of the business, would destroy its value without benefiting either party.

March 23d 1868. Before STRONG, READ, AGNEW and SHARSWOOD, JJ. THOMPSON, C. J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Montgomery county :* In Equity. To January Term, No. 238.

This was a bill filed March 12th 1866, by Henry T. Slemmer against Jacob C. Slemmer, William Slemmer and Charles Slemmer.

The bill set out :—that the plaintiff and defendants, on the 5th of January 1861, entered into articles of partnership, for the mining and sale or refining of petroleum. Amongst other stipulations were :—

" 4. If any member desires to leave the company, he shall be permitted to do so upon agreement between all the members as to the value of his interest in the company, which shall be paid him by the remaining part of the company, by note or cash, or by his payment to the company of the sum that may appear to be due from him to equalize his part of the expenses not theretofore borne by him, such payment to be by note or cash. Where the parties cannot mutually agree as to such value or amount to be paid as above provided, such amount shall be designated by a disinterested party to be selected as arbitrators are usually chosen. No appeal from such arbitrament to be authorized.

" 5. A final settlement of company affairs may be demanded by the concurrent action of any three members, when the assets and debts shall be divided in a similar manner to that set forth in the preceding paragraph."

[Jacob C. Slemmer's Appeal.]

The mining business proved so unprofitable that it was abandoned in September 1861, and the plaintiff determined to enter into the business of refining petroleum, having previously made successful experiments with that view.　In October 1861, he bought of the executors of David Cooke a lot of land at the corner of Ford and Egypt streets, Norristown, for which he received the deed November 18th, and took the defendants (who are his brothers) into partnership as oil refiners, under the firm of "Slemmer Brothers," they agreeing to erect temporary works for the refining, and plaintiff agreeing to lease to them the above-mentioned lot.　On the 5th of June 1862, a lease of the lot except a small portion (described in the bill) was made to defendants for fifteen years, with a proviso that it might end at any time within that period, if defendants should require it, by reason of their closing the refining business; and at the termination of the lease in any way, the plaintiff should purchase the buildings, &c. erected on the lot at a price agreed on by the parties, or if they could not agree, fixed by arbitrators "selected in the usual manner."

The parties entered into another agreement February 1st 1864, containing these stipulations amongst others:—

"1. That each member of the firm shall devote his mental and physical labor to the advancement of the business of the firm, except in case of sickness depriving him of his natural ability.

"2. Inasmuch as one of the members, H. T. Slemmer, M. D., being engaged in other business, the remaining members of the firm agree to absolve him from physical labor at the refinery, upon the following terms: That the said H. T. Slemmer, M. D., pay for the services of William Barry, or any laborer of similar wages employed by the company."

The plaintiff always paid Barry, and complied in all respects with the agreements, but the defendants have repudiated them, and voted to themselves salaries amounting to $3600 per annum. The buildings were erected on the lot in 1861, and the necessary machinery put into them at the joint expense of the members of the firm, and the business of oil refining was carried on harmoniously and profitably till shortly before January 1st 1866.　On the 25th of that month the defendants notified the plaintiff that they had resolved to discontinue the business of the firm and abrogate all the agreements, unless the plaintiff would sell his real estate on their own terms, and comply with other conditions unwarranted by the partnership agreement; they also submitted propositions to sell their interests in the works, with the oil, machinery, &c., except the last undrawn dividend, for $50,000 cash, and threatened, in case of his refusal, to dissolve the firm, wind up its affairs and terminate the lease.　The defendants have refused to purchase any more oil for the refinery, have purchased a lot

[Jacob C. Slemmer's Appeal.]

near the works with avowed purpose of erecting a new oil factory for themselves, and threaten to remove there a large part of the machinery of the present factory. The plaintiff averred that, in consequence of the virtual dissolution of the firm and termination of the lease by the acts above set out, &c., he is entitled to have all their rights, &c., in the oil factory and firm property at a price to be fixed according to their agreement. The plaintiff has not been able to agree with the defendants on a price, and they have refused to choose arbitrators.

The prayer was for a decree of dissolution, the appointment of arbitrators to make an appraisement, for conveyance and delivery by the defendants to the plaintiff of the buildings, &c., firm effects, &c., upon his paying or securing to them their shares of the valuation; that the defendants be restrained from paying themselves salaries from the firm fund, and from further managing or intermeddling with the business of the factory.

(The agreement of January 5th 1861 and the communication of January 25th 1866 are found in the preceding case, H. T. Slemmer's Appeal, at pp. 157, 159.)

The lease was as follows:—

"This indenture, made this 5th day of June 1862, between Henry T. Slemmer, M. D., &c., of the first part, and Jacob C. Slemmer, William Slemmer, Henry T. Slemmer, M. D., and Charles Slemmer, trading under the name and style of 'Slemmer Brothers,' oil refiners, of the same place, of the second part; Whereas, the parties of the second part have erected upon the premises of the party of the first part, in and through his name, works for the refining of petroleum or rock oil; the same having been done upon verbal agreement of a lease for said premises to them: Now, therefore, to legally set forth the same, this indenture witnesseth, that the party of the first part has let, &c., unto the parties of the second part, all that certain lot or parcel of ground, situate in the borough of Norristown, lying at the south-east corner of Egypt or Main street and Ford street, being, &c., except, &c., for the term of fifteen years from April 1st 1862, at the yearly rent, &c. Reserving, however, the right to use such portions of the said premises as may not be considered requisite by the said parties of the second part for the prosecution of their business as oil refiners. * * *

"It is hereby mutually agreed that this lease may end at any period within the fifteen years if the parties of the second part desire it in consequence of closing their business as oil refiners. And that, at the close of the said term of fifteen years, or such earlier period as the parties of the second part desire to terminate it, the party of the first part shall purchase all the buildings erected or to be erected upon the premises, at such sum as both parties may agree to be equitable and just; or failing such agree-

ment, then at such sum as may be determined upon by three disinterested arbitrators, selected in the usual manner; whose judgment shall be conclusive upon all parties."

Agreement of February 1st 1864:—

"Know all men by these presents, that we, Jacob C. Slemmer, William Slemmer, Henry T. Slemmer, M. D., and Charles Slemmer, trading under the name and firm of Slemmer Brothers, oil miners and refiners, &c., have this first day of February, A. D. 1864, for the mutual benefit of the members of the firm, and that there may be no misunderstanding of the rights and duties of each member, entered into and made the following agreement, to wit:

1. That each member of the firm shall devote his mental and physical labor to the advancement of the business of the firm, except in case of sickness depriving him of his natural ability.

2. Inasmuch as one of the members, H. T. Slemmer, M. D., being engaged in other business, the remaining members of the firm agree to absolve him from physical labor at the refinery, upon the following terms: That the said H. T. Slemmer, M. D., pay for the services of William Barry, or any laborer of similar wages employed by the company.

3. That, inasmuch as the said H. T. Slemmer, M. D., is engaged in the selling, by retail, of the commodities of the firm, that we will sell in lots to him upon the same terms as other purchasers, not exceeding five barrels at any one time; neither shall he purchase from others while he has a sufficiency on hand, to the detriment of the company, without their consent. Purchasing less than five barrels of any one commodity, to be charged the same as other customers purchasing similar quantities.

4. That the said H. T. Slemmer, M. D., agrees not to sell the oils of the company by the barrel from his private stock, but all such sales shall be for the company and company transactions.

5. That until otherwise determined by the company, or until required to remove the same, the office of the company shall be at the drug store of the said H. T. Slemmer, M. D., where all the books and papers relating to the firm shall be kept, except the book specified in paragraph 9 hereof, and one copy of all papers which are made in duplicate.

6. That the said H. T. Slemmer, M. D., shall be the treasurer of the company until otherwise agreed upon.

7. That one of the members engaged in the active operations at the works, shall be appointed clerk and book-keeper, so that the accounts may be kept according to law.

8. That a daily price current be fixed by the company which shall govern all sales.

9. That a book be provided by the company, wherein all valuable papers belonging to the company shall be entered, together

[Jacob C. Slemmer's Appeal.]

with this agreement, signed by all the members; and any subsequent alteration or change to be likewise entered therein."

The defendants by their answer denied that the facts alleged in the bill showed that the plaintiff had any equity, or that the court had jurisdiction, the agreement set out in the bill having confided the settling of controversies to an arbitrator chosen by the parties.

They averred that it was part of the verbal agreement that the firm should erect their own experimental refinery, which they did, on Strawberry alley, in Norristown, in 1860; the defendants attended to obtaining and working oil lands in Western Pennsylvania and Virginia, and the experimenting in the refinery was committed to the plaintiff; the mining, &c., were never abandoned, but were finally successful, and the firm lands in Crawford and Venango counties were sold for $51,000, of which the plaintiff received his share.

Repeated efforts were made by the firm to procure a location for a refinery, without success, until the defendants were informed by the plaintiff that he was negotiating for the Cooke lot; they understanding it was to be purchased in the name of the firm, advised the plaintiff that they consented to its purchase for a refinery. The plaintiff's purchase of the lot in his own name, was in violation of his duty to his partners, and of his understanding in relation to it with them, and without notice to them that it was for his individual benefit; upon remonstrating with him, he said the vendors had refused to make the sale to the firm; but would make it to himself, which was false; and the defendants did not know its falsity until January 1866. Without suspecting his designs to their prejudice, or their right to compel a conveyance, they consented to a lease by him to the firm. They denied that the partnership was dissolved, and declared their purpose that it should not be, until it could be without giving the plaintiff an undue advantage; expressed their willingness that he should retire under the terms of the articles, or continue, if he would act in good faith. They charged the plaintiff with a design and continued effort by fraudulent representations to induce defendants to build on and improve the lot, and establish a business from which, when he thought it most advantageous, he might withdraw and compel a sale to himself on his own terms. The plaintiff has rendered little assistance in carrying on the business of the firm, while the defendants have devoted their whole energies to it. He surreptitiously procured a patent in his own name for their invention of the Slemmer Brothers' lubricating oil. They admitted that the plaintiff paid Barry his wages, but denied that he had in other respects complied with the agreement, (setting out various failures.) The plaintiff, prior to January 1866, withdrew from the office of treasurer, and required that the firm's office should be removed from his store. On that day the company resolved,

[Jacob C. Slemmer's Appeal.]

in consequence of these things, that the arrangement of labor be annulled as a whole, and that each member actively operating the works should receive a compensation of $100 per month; but no money has been drawn under the resolution until the rights of the partners should be adjudicated. The answer set out numerous grievances from the plaintiff, which induced the defendants to determine to close up the partnership, and for that purpose they gave him the notice of January 25th 1866, but on further consideration they determined to continue the business in the best manner they could. They denied a design to erect new buildings on the lot purchased by them, unless an extension of the business rendered it necessary, or in the event of a dissolution according to the articles, or to abandon the present factory or to remove its machinery, &c., or that the partnership had been "*virtually*" dissolved or otherwise. The plaintiff since filing his bill had been entitled to a share of the profits of the concern, had paid the wages of a hand at the factory, opened the firm's letters, received orders, &c., for work. They further averred that the time for a valuation of the buildings, &c., had not arrived, that they were necessary for the transaction of the firm's business.

They also prayed that the answer might stand as a cross-bill, and that the court would decree the conveyance of the Cooke lot to the firm of Slemmer Brothers, and restrain him from interfering to prevent the active members of the firm from receiving compensation.

Appended to the answer were 90 interrogatories by the defendants, which the plaintiff answered.

A replication was filed, and an examiner was appointed who took a large mass of testimony tending to prove the allegations of the respective parties. Amongst other things, one of the executors of Cooke testified: "I have not the slightest recollection of ever having refused to sell to Slemmer Brothers; I did not know, during these negotiations, that there was a firm of Slemmer Brothers."

At a meeting of the firm, January 1st 1866, the following, amongst other proceedings, were had:—

"Resolved, That the arrangement for labor being deranged by the voluntary retirement of H. T. Slemmer, M. D., as treasurer, the same be annulled as a whole, and that hereafter the members of the company actively operating the works shall receive a monthly compensation of $100; and that notice of desire or willingness so to operate be given at or before the beginning of each month, and entered on the minutes of the company. Which resolution, being put to vote, was carried, as follows: Yeas, 3, viz., J. C. Slemmer, Charles Slemmer, William Slemmer; Nays, 1, viz., H. T. Slemmer, M. D. In pursuance of the foregoing resolution, Jacob C. Slemmer, Charles Slemmer

[Jacob C. Slemmer's Appeal.]

and William Slemmer then announced their intention to actively operate the works for the month of January 1866.    H. T. Slemmer offered to operate by substitute, which was disallowed, and he offered his verbal protest," and on the 20th of the same month the following : " Whereas, irreconcilable differences exist which preclude harmonious and successful operations by our company as oil refiners, be it therefore resolved, that the energies of the company be henceforth wholly directed to placing the company effects in a merchantable condition, with a view to an early and equitable division thereof, and a final settlement of company affairs, as provided in our 'Articles setting forth an agreement,' &c., dated January 5th, A. D. 1861.    The motion being seconded, the yeas and nays were demanded, and were as follows : Yeas, J. C. Slemmer, Charles Slemmer and William Slemmer—3 ; Nay, H. T. Slemmer—1."

The minutes of the meetings of the company from January 1st 1866 to April 1st 1867, both inclusive, show that up to February 26th 1866 the plaintiff, with one or two exceptions, and the rest of the firm were present.    After that time the plaintiff does not appear to have been present at any of the meetings.    The minutes exhibit a want of co-operation and harmony, the plaintiff and defendants in almost every instance voting against each others' propositions.

The pleadings and proofs were referred to Joseph Fornance, Esq. (the examiner), as master.    The master made an elaborate report, finding facts, and reported in favor of the plaintiff in the main.    Both parties filed exceptions to the report.

The court (Chapman, P. J.) confirmed the report and decreed : that the partnership be dissolved ; that the parties meet in the prothonotary's office at a time named and choose arbitrators, under the compulsory arbitration law, to appraise the buildings, improvements, &c., on the lot at the corner of Ford and Egypt streets ; the arbitrators to file their report in ten days from their appointment, the report to be part of the record ; that the defendants surrender to the plaintiff the buildings, &c., upon his paying or tendering his proportion of the appraised value ; that the defendants be restrained from appropriating compensation to themselves ; appointed a receiver to dispose of stock on hand, &c., and do such things, not provided for by contract, as are usually done by a receiver ; that the profits since January 25th 1866 shall be estimated as part of the joint estate, and that the defendants pay the costs.

The defendants appealed, and assigned for error the decree of the court below ; that the court did not decree a conveyance of the refinery lot to the firm, and enjoin the plaintiff against preventing the active members of the firm from receiving just compensation.

[Jacob C. Slemmer's Appeal.]

*C. Hunsicker* and *G. R. Fox*, for appellants, as to the demurring part of the answer, cited 1 Danl. Ch. Pr. 382, 388. The appointment of a receiver was uncalled for: Chicago Oil Co. *v.* U. S. Petroleum Co., 7 P. F. Smith 83. It is a breach of trust for plaintiff to hold the title to the lot: Hitchins *v.* Cosgrove, 4 Russ. 562; Densmore Oil Co. *v.* Densmore, Leg. Int. Feb. 21st 1868; Collyer on Part., §§ 166–189; Featherstonhaugh *v.* Fenwick, 17 Ves. 298. As to dissolution: Collyer on Part., §§ 181, 301; 1 Story's Eq. Jur. 668, 693; Hitchcock *v.* Croker, 6 Ad. & Ell. 438; Tonson *v.* Collins, 1 W. Bl. 335; Aycinena *v.* Peries, 6 W. & S. 244; Foulke *v.* Harding, 1 Harris 242; Holden *v.* McMackin, 1 Pars. R. 280. As to compensation: Waring *v.* Cram, 1 Id. 522; Crawshay *v.* Collins, 15 Ves. 218; 1 Sw. 495; s. c. 2 Russ. 325; Browns *v.* De Tastet, 1 Jacobs 284; Wedderburn *v.* Wedderburn, 2 Keene 722.

*R. C. McMurtrie* and *D. H. Mulvany*, for appellees.

The opinion of the court was delivered, May 7th 1868, by

SHARSWOOD, J.—The main question which arises on this record and which has been fully discussed, both in the oral and printed arguments, is, whether the articles of copartnership, dated January 5th 1861, were abrogated by the lease of June 5th 1862.

That there is any express agreement to supersede or annul them has not been and cannot be pretended. It is alleged, that before the lease or the verbal agreement for it, the business of the partnership had been that of miners, not refiners. But the original articles expressly contradict this allegation. They show clearly that refining was from the first within the contemplation of the parties.

They recite " an agreement verbally entered into in the summer of 1860, for the mining for and disposition of, by sale or *refining,* rock oil or petroleum." A small experimental refinery was erected with the funds of the firm on Strawberry alley, in the borough of Norristown, in the summer of 1860. The lease says not a word of any new business being about to be commenced, but it is a lease from the plaintiff, Henry T. Slemmer, to the firm " Slemmer Brothers, oil refiners." Nor is there anything in the provisions of the lease, which is not perfectly consistent with the articles. There is no implied rescission. It was declared in the articles that " a final settlement of company affairs may be demanded by the concurrent action of any three members." With an evident reference to the event contemplated in this clause, the lease provides as follows:—

" It is hereby mutually agreed that this lease may end at any period within fifteen years, if the parties of the second part (Slem-

[Jacob C. Slemmer's Appeal.]

mer Brothers), desire it, in consequence of closing their business as oil refiners."

A technical dissolution of the firm by the withdrawal of one or more partners would not in law, if no provision had been made for the case, put an end to the lease. The term would still have been assets, to be disposed of and accounted for on a winding up or to pass to and become the property of the continuing firm on the retirement or death of a member. It was expressly agreed, therefore, that in case of a final settlement and closing the business of the firm as oil refiners, the term should end. But it is not to expire before its efflux by time in any other event. It would be unreasonable to put a different construction upon it. The plaintiff, Henry T. Slemmer, one of the firm, is the party of the first part,—the firm, of which he is a member, "Slemmer Brothers," the party of the second part. By the express words of the instrument, it can only be ended before the close of the fifteen years, "if the parties of the second part desire it." Yet it is in the power of the plaintiff at any time to withdraw and thus cause a technical dissolution of the firm. He could do this independently of any agreement, subject to his liability to his copartners if the act was wrongful: Mason *v*. Connell, 1 Whart. 381. But here the free privilege of withdrawing at any time was secured to each partner by the terms of the original articles. It makes the argument so much the stronger on the construction of the lease. It could never have been the intention of the parties that the plaintiff, the lessor, should himself have the power of determining the lease at any time by retiring from and thus technically dissolving the firm. Nor can there even be any inference drawn from the provisions of the lease, that the time when the partnership was to continue was fixed at fifteen years. At the end of that period, the firm might wish to build a new and enlarged factory in a different place. The plaintiff, the lessor, would have been obliged then to accept a surrender, and to pay or to be accountable to the firm for the appraised value of the buildings and improvements, and the partnership still continue to operate under its original articles. There was nothing improbable in such an event, if the friendly and fraternal relations between these brothers had continued as they ought to have done. The agreement then of January 5th 1861 is still the law of this partnership, made by the parties, its terms reasonable and just in themselves, and which a court of equity ought to regard as the rule in all questions arising between them.

But it is assumed in the plaintiff's bill, and has been earnestly contended, that the letter signed by the defendants and addressed to the plaintiff, dated January 25th 1866, was a virtual dissolution of the partnership—that it closed their business as oil refiners, consequently ended the term under the lease of June 5th 1862; and that the provisions of that instrument formed thereupon the

rule for winding up the concern. Such seem to have been the opinions of the master and the court below. We cannot yield our assent to this as a conclusion of fact or of law. The most and the worst that can be said of the letter of January 25th 1866, is that it was a hasty and ill-advised threat. It was notice merely of the policy they proposed to adopt with a view to a dissolution at some future time. By the terms of the original articles, any three members of the firm had clearly a right to adopt such a resolution, and it was right to give notice of it to the plaintiff a reasonable time before proceeding to carry it into effect. The plaintiff himself appears to have so regarded it. He attended a meeting of the company four days afterwards, when a resolution was adopted against his voice, declaring "that the energies of the company be henceforth wholly directed to placing the company effects in a merchantable condition with a view to an early and equitable division thereof, and a final settlement of company affairs as provided in our articles setting forth an agreement, &c., dated January 5th 1861." There is nothing, therefore, in this transaction which ought to vary the relative position of the parties.

There is one other matter, which requires perhaps to be noticed. It relates to what no doubt has been the source from which the unhappy differences between these brothers first sprung, the purchase by him in his own name, of the land on which the Ford street refinery was erected and the adjoining lot. The defendants allege that this was a fraud upon them, and pray that their answer may stand as a cross-bill—not for discovery, but relief—to wit, that the plaintiff may be decreed to convey to the firm. Without stopping to inquire whether this course of pleading is allowable under Rules XXXIX. and XLI. in Equity, as the point of practice has not been made, we think the defendants have failed to show any title to the relief for which they pray. The purchase by and in the name of the plaintiff was communicated by him to the other members of the firm at the time, and although the reason he assigned for it was probably false and undoubtedly flimsy, yet they appear to have acquiesced. Besides, which, even if the real estate purchased by the plaintiff ought to have been in the name and for the use of the firm, it is entirely too late now for the defendants to set up this claim. The acceptance of the lease and the improvements made under it; the time which has elapsed; and the altered position of the parties, all preclude the idea of going back and unravelling these old transactions. Though, had the defendants shown themselves prompt, a court of equity might have decreed a conveyance, it would be clearly inequitable to do so now. It is a maxim as good in equity as at law : *Vigilantibus non dormientibus jura subveniunt.*

It only remains to consider whether there should be a decree.

8 P. F. SMITH—12

of dissolution and on what terms.   On this subject a wide discretion is necessarily vested in a court of equity.   In this state the Act of Assembly of June 16th 1836, § 13, Pamph. L. 789, has specially conferred upon the Supreme Court and the Courts of Common Pleas "the supervision and control of partnerships." A partnership will not be dissolved on slight grounds.   The plaintiff complains that the defendants "have failed with him to conduct the business of the firm in a proper and harmonious manner."   The defendants, at a meeting of the company in January 29th 1866, voted for and adopted a declaration that "irreconcilable differences exist, which preclude harmonious and successful operations by our company, as oil refiners."   It is lamentably plain therefore, and we might perhaps be justified in saying, admitted on both sides, that such have been the dissensions which have sprung up between these brothers, that the partnership heretofore existing between them can no longer be carried on with comfort and advantage to all concerned.   In such a case a court of equity will decree a dissolution: Bishop *v.* Breckles, 1 Hoff. C. R. 534; Collyer on Partn. § 297.   In making such a decree the court will consider not merely the terms of the express contract between the partners, but also the duties and obligations implied in every partnership contract: Smith *v.* Jeyes, 4 Beavan 503.   Where a valuable business has grown up by the joint labors and contributions of all, the court should be careful to preserve it if possible, and to put all the parties upon a fair and equal footing in competing for it.   To appoint a receiver, to direct a sale of the whole and a winding up of the business would destroy its value without benefiting either party.   The plaintiff in this bill prayed for an appraisement of all the partnership assets, and that the defendants should be directed, on the plaintiff's paying to them or securing to them the payment of the value of their respective shares in the partnership, to yield up to him the possession of the oil factory, and all the partnership estate, and that the defendants be restrained from the further management of the business of the said factory, or of interfering or intermeddling with the same in any way or manner whatever.   In other words he asked a decree, which should transfer the entire business to him.   The defendants might, with much greater show of reason, demand that the court should enforce the provision of the original articles against the plaintiff as a retiring partner, and require him upon an appraisement to assign all his interest to them.   The court below did not make such a decree as the plaintiff asked, but on the ground that the letter of January 25th 1866, was a dissolution of the partnership and terminated the lease, they directed an appraisement of the building and improvements on the lot held under it, and the delivery of them to the plaintiff, and appointed a receiver to wind up the affairs of the concern.   Practically there would not be

[Jacob C. Slemmer's Appeal.]

much difference between the decree prayed for and that granted. The possession of the oil factory and its fixtures and appurtenances would be possession of the business.    The duty of the receiver would only be to sell the stock of oil, material and tools on hand, and collect the outstanding debts.    We deem it our right and our duty to hold the scales of justice more equally between these brothers, to give to each party the right to bid for the business and estate of the partnership, and then to award it to the highest bidder.    We have made a decree accordingly.

The decree of the Court of Common Pleas of Montgomery county is reversed, and now it is ordered and decreed that on the dissolution of the said firm of Slemmer Brothers as hereinafter declared, all the estate and assets of the partnership, including the unexpired term of the lease of the premises on which the factory is erected, and the buildings and improvements thereon, shall be assigned and transferred to that one or more of the said partners, who shall offer to pay or secure to be paid within a reasonable time the highest price for the same : and that the record of this case be remitted to the Court of Common Pleas of Montgomery county, with direction to carry this decree into effect, and for that purpose to make all necessary orders and references for the purpose of settling and adjusting the accounts between the parties, and making a final decree therein ; and upon such assignment and transfer being made, in pursuance of the order of the court, then that the said partnership shall be thenceforth dissolved.    Both parties to pay their own costs in the court below and in this court : and the costs of the subsequent proceedings to be paid from the assets of the partnership.