Lanshe, Appellant, v. Lanshe et al.

Argued December 10, 1928.

Before TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*Fred B. Gernerd,* for appellant.—Plaintiff was not entitled to have the value of the good will carried into the account: Underdown v. Underdown, 279 Pa. 482; Mus'selman and Clarkson's App., 62 Pa. 81; Marmaduke v. Brown, 254 Pa. 18; Rankin v. Newman, 114 Cal. 635, 46 Pac. 742.

*H. W. Welty,* of *Butz, Rupp & Welty,* for appellees.

OPINION BY KELLER, J., March 1, 1929:

On January 5, 1925, a partnership was formed by Frederick J. Lanshe, Jules C. Lanshe, John L. Lanshe

and Frank B. Kneedler to carry on the business of selling household furniture, pianos and musical instruments at retail in Allentown and Reading, under the name "The Lanshe Furniture Company." The agreement of partnership was in writing and was evidently prepared by or under the direction of Frederick J. Lanshe, as it appointed him managing head, with authority to have charge of all financial matters, purchase all stock and merchandise, employ all clerks, fix all salaries, of the partners as well as employees, and sign all checks, notes, obligations and acquittances of the firm. It provided that he should be the sole judge as to whether any of the partners was guilty of a breach of the terms of the agreement, in which event the offending partner must withdraw and should receive as his share of the partnership only the money actually paid in by him in cash, with interest at six per cent. and five dollars as representing his share of the profits; and in other provisions showed his control.

Frederick J. Lanshe and Jules C. Lanshe had previously been in partnership in the same business as Lanshe Brothers. They contributed to the new partnership goods and merchandise in the amount of $2,354.17 and the "Victrola Agency," taken to be of the value of $25,645.83; making their total contribution equivalent to $28,000, for which each of them was credited on the books with $14,000 capital. The outstanding book accounts of Lanshe Brothers remained the property of its members and did not go into the new firm; but the latter was to pay all bills due by Lanshe Brothers on the stock purchased and forming part of the assets of the new partnership. The agreement provided that John L. Lanshe and Kneedler were privileged to purchase a one-fourth interest in the new partnership by paying seven thousand dollars each (one-fourth of the assets above mentioned) or by crediting their shares of the net profits at the end of each and every year until so made up.

The agreement also provided that in case of the dissolution of the partnership Frederick J. Lanshe should be sole liquidating partner, if he chose so to act, and should receive the compensation therefor fixed in the articles; and in case of his death he should be permitted to designate his executor or any member of his family to act in his place as liquidator and receive the salary he would have received if living.

The following clauses of the articles are especially pertinent in this case:

"(17) In case of the death of a partner, the surviving partners shall have the right to designate, in writing, within six (6) days after the death of the deceased partner, whether they choose to carry on the business of said partnership, and their so choosing to carry on the partnership, shall give them the right to purchase the deceased partner's interest at whatever the book value of his share might be at the time. In case the surviving partners do not exercise their option as aforesaid, then the legal representatives of the deceased partner shall be entitled to make a like offer within six days after the death of the deceased partner, to purchase the interests and shares of the surviving partners at the book value of their respective shares or interests in said partnership. Upon failure of either the surviving partners or the legal representatives of the deceased partner, to exercise the options as aforesaid, then the liquidation of the partnership shall proceed without delay.

(18) For the purpose of ascertaining the share or book value of a share of any one of the partners upon dissolution or death the good will of the business shall be considered of no value unless the business should be sold to a third party. The value of the merchandise and stock in trade shall be the invoice cost thereof as shown by the bills, less any trade or cash discount granted thereon to the partnership."

On July 30, 1926, the Victrola agency was taken

off the books as of no value. The assets were decreased by $25,645.83 and the shares of Frederick J. Lanshe and Jules C. Lanshe each reduced by half of that amount, or $12,822.92 and $12,822.91, respectively, leaving of the original contribution by them $1,177.08 and $1,177.09 to their respective credit. On the next day, July 31, 1926, the assets of the firm were increased by an item ''good will, $14,000,'' and corresponding increases made to the capital account of Frederick J. Lanshe and Jules C. Lanshe, in the sum of $7,000 each. There can be no reasonable doubt that the capital credit thus given each of these two partners represented one-half of the good will entered as an item of assets the same day. It had no other possible basis.

John L. Lanshe died on December 8, 1926 and within six days thereafter the surviving partners notified his administratrix in writing of their election to carry on the business and purchase his interest at the book value at the time of his death, in accordance with the 17th clause of the articles as above.

According to the books, the assets of the partnership at the time of John's death, including the item of 'good will' amounted to $69,084.97; the liabilities $34,276.49; leaving a net book value of $34,808.48; which was apportioned among the partners as follows:

| | |
|---|---|
| Frederick J. Lanshe | $12,312.92 |
| Jules C. Lanshe | 12,312.92 |
| Frank B. Kneedler | 6,135.82 |
| John L. Lanshe | 4,046.82 |
| | $34,808.48 |

The shares of Frederick and Jules included, as above stated, the sum of $7,000 each, representing half of the good will, $14,000, included as an asset of the firm.

But the 18th clause of the partnership agreement provided that in ascertaining the share or book value of any one of the partners on dissolution or death, the good will should be considered of no value, unless the business should be sold to a third party. Deducting $14,000 from the book value of the assets leaves $20,808.48 as the net worth of the partnership for the purposes of this case. The question here involved is whether a corresponding deduction is to be made from the book values of Frederick and Jules' shares. The court below ruled that it was not, but that the net value of the business, after deducting $14,000 for good will, or $20,808.48, was to be divided among the four partners in the proportion of their respective book values as shown above, including in the computation the value of the good will credited to Frederick and Jules. In other words, under the lower court's ruling, the good will is to be regarded as of no value in computing the assets of the partnership, but is to be considered at its full valuation in ascertaining the book value of the respective partners' shares, for the purpose of apportioning the assets among them. We think this is in opposition to the language of the agreement. It provides that "in ascertaining the share or book value of a share of any one of the partners upon dissolution or death the good will of the business shall be considered of no value, unless the business should be sold to a third party." It does not provide that the good will shall be considered as of no value in arriving at the assets of the firm; but that it shall be considered of no value in ascertaining the book value of the shares of any of the partners. If the good will were eliminated from the books as of no value, the capital of Frederick and Jules would necessarily be reduced to that extent, for it was increased just so much by its inclusion; just as when the Victrola agency was marked off the books as of no value, the capital of Frederick and Jules, to which it had been

originally credited was reduced by the amount so marked off; the deduction was not charged against all four partners in proportion to their then interests. We think the same rule applies here; that the plain meaning of the clause is that if the business is sold to a third person, the good will shall be included as an item of value and that Frederick and Jules shall reap the advantage, but that if not sold to a third person, it shall be considered as of no value in ascertaining the book values of the partners, and shall be eliminated as an asset of the firm and as capital of the partners contributing it; in exactly the same manner as the Victrola agency was treated when it was considered of no value. Full effect is not given the 18th clause of the partnership agreement if the good will credited to the shares of Frederick and Jules is valued at $14,000 in ascertaining the book value of John's share.

According to the ruling of the court below the book value of the respective partnership shares for the purposes of this case was determined to be:

| | |
|---|---|
| Frederick J. Lanshe | $7,359.96 |
| Jules C. Lanshe | 7,359.96 |
| Frank B. Kneedler | 3,668.53 |
| John L. Lanshe | 2,420.03 |
| | $20,808.48 |

We are of opinion that a correct construction of the agreement would fix the values, for present purposes, as follows:

| | |
|---|---|
| Frederick J. Lanshe | $5,312.92 |
| Jules C. Lanshe | 5,312.92 |
| Frank B. Kneedler | 6,135.82 |
| John L. Lanshe | 4,046.82 |
| | $20,808.48 |

From the share of John L. Lanshe must be deducted the sum of $262.52 paid on account, leaving a balance due his estate of $3,784.30, with interest from December 8, 1926.

No issues of fact are involved in the suit. The case depends wholly on the construction to be given the articles of partnership.

The assignments of error, except the tenth, eleventh and fourteenth, are sustained. The decree is reversed and the respondents, appellees, are ordered and directed to pay to the complainant, appellant, the sum of $3,784.30 with interest from December 8, 1926, and to pay the costs of suit.