**Eisenberg v. Eisenberg**

*M. Mark Mendel,* for plaintiff, Martin Eisenberg

*Michael H. Egnal,* for defendant, Herman Eisenberg

ANDERSON, *J.,* May 3, 1976 — These are two

consolidated actions between two brothers, who are business partners, for the termination of a partnership, liquidation of its assets and the settlement of its affairs. These actions were consolidated for trial. . . .

## DISCUSSION

Both partners have brought their respective actions to compel dissolution, and this court has found as a fact that the relationship between the partners leaves no other course. In addition, Martin has given notice in conformance with section 2 of the partnership contract of his desire to terminate their relationship.[1] Equity has jurisdiction to decree dissolution: Taylor v. Richman, 395 Pa. 162, 167, 149 A.2d 69 (1959); Donatelli v. Carino, 384 Pa. 582, 122 A.2d 36 (1956); Zuracki v. Spector, 18 D. & C. 2d 670 (C.P. Phila. Co., 1959). See Ellis v. Ellis, 415 Pa. 412, 203 A.2d 547 (1964).

To the extent that they are applicable, the terms of the partnership agreement govern the relationship between the partners: O'Donnell v. McLoughlin, 386 Pa. 187, 125 A.2d 370 (1956). Accordingly, we look to the applicable provision of the agreement to determine the method of dissolution. Section 10 provides, in pertinent part:

1. Section 2 of the agreement provides:

"Term. This Agreement shall be terminated upon notice of either Partner. Such notice shall be in writing and shall state a date of termination of not less than one calendar month from the end of the month in which such notice is given."

No limitation is placed upon the right of either partner to elect to terminate. On May 14, 1975, Martin sent a notice to Herman providing that termination should take place "at the end of the calendar month of June 1975." That notice fully meets the time limitation required by section 2.

"10. *Dissolution of Partnership*

"The partnership shall terminate either by the notice of either Partner as provided in Paragraph 2 of the Agreement, or by the death of either Partner.

". . .

"(b) In the event of the termination of the partnership during the lifetime of both Partners, either Partner may proceed on behalf of the partnership to make an orderly liquidation . . . of the partnership assets.. . . .

"(c) Orderly liquidation as used in (b) above shall mean such form of liquidation as shall be approved by the then regular employed public accounting firm and the legal firm then generally representing the partnership and shall be absolutely binding upon the partners."

Section 10 of the agreement permits "either partner" to conduct the liquidation. This would necessarily assume some degree of amity among the partners, for the agreement does not provide which partner shall conduct the liquidation or how that partner shall be selected. In this case, the antagonism between Herman and Martin makes it impossible for either partner to handle the liquidation, and the situation would be little better if both of them were to do so. However, we have a more serious problem with respect to determining how the liquidation should be conducted.

Pursuant to section 10 of the partnership agreement, Herman submitted to the accountant and attorney for the partnership a proposal for liquidation under which the partners would bid against each other for the inventory, including the office equipment of Three Brothers and Showcase One, Inc., with the purchaser of Three Brothers' inventory to receive its real estate and the purchaser of the Showcase inventory to receive the warehouse.

Martin's counter-proposal to the accountant and attorney was for a going-out-of business sale of the personalty and an auction sale of the realty.

The accountant and attorney approved neither plan. Instead, they offered a plan of their own in which they observed: "It is our belief that the partnership, known as Three Brothers, will realize the greatest value in liquidation through the sale of the business assets through a closed-bid auction." Martin agreed to accept the Panitch-Rabinowitz Plan, but Herman refused. So we have a situation where we still have lack of unanimity between the partners on how the partnership is to be liquidated under the partnership agreement, unless we conclude that the partners are bound by the proposal of the accountant and the attorney for the partnership.

Section 10(c) of the partnership agreement provides for the *approval* of a plan of liquidation by the accountant and attorney. The word "approval" means the act of confirming, ratifying, sanctioning, or consenting to some act or thing done by another: Black's Law Dictionary, 4th Edition. It does not mean to draft, prepare or submit. In the context of the partnership agreement, the "approval" which the accountant and the attorney are authorized to give must necessarily relate to a plan submitted by either or both partners.

It is not to be assumed that the partners have, by the agreement, delegated to their accountant and lawyer the authority and responsibility for determining on their own how the partnership should be dissolved.

Furthermore, the Panitch-Rabinowich Plan suffers from serious gaps as to how the liquidation should be accomplished, particularly in view of the strained relations between the partners.

(1) The plan does not indicate to whom the "sealed" bids should be submitted or who should supervise the sale.

(2) No provision is made for publicizing the availability of the assets to "outsiders."

(3) No provision is made for the liquidation of outstanding actual or potential obligations.

(4) The proposal does not indicate to whom the payments are to be made or how they are to be handled.

(5) Nothing is said as to whether payment by the partners is to be made in cash or on a time basis, and if on a time basis, the nature of the payments and security for the payments.

In short, all the proposal contains is a skeleton of liquidation, the implementation of which is left to the agreement of the partners. Certainly, in its present form, the execution of the proposal is now impractical in view of the relationship between the partners.

In any event, in view of the dissension between the partners, neither should be permitted to liquidate the partnership business: Weissman v. Henkin, 154 Pa. Superior Ct. 12, 16, 34 A.2d 907 (1943).

This leaves us with no plan under the partnership agreement.

This conclusion is reinforced by the relief requested by the partners in their respective actions in equity. Herman originally sought an order which, in essence, would provide for Herman to pay to Martin the value of Martin's interest in the partnership, or for the court to appoint a receiver to "preserve the said businesses." Martin originally sought an order permitting Martin to conduct a liquidation and excluding Herman.

Herman now requests appointment of a receiver to conduct a going-out-of-business sale, or in the alternative, that the receiver proceed to execute the Herman Eisenberg liquidation plan. Martin now asks for the appointment of a receiver for the sole purpose of conducting a private auction sale of the entire business entity between Martin Eisenberg and Herman Eisenberg.

Originally, Martin contended that an agreement had been reached before Judge Takiff on October 9, 1975, for the liquidation of the business by means of a plan whereby Martin would submit a proposal for liquidation in which Herman could decide whether he wished to be the buyer or the seller.

It appears from the evidence that at the meeting of the parties and their counsel with Judge Takiff on October 9, 1975, it was orally agreed to follow such a course with the objective of achieving an agreement on liquidation. However, the next day and before Martin had submitted his proposal, Herman had second thoughts and withdrew from the plan. At that time, there certainly was no consummated agreement, only a procedure. In fact, the proposal submitted by Martin was never submitted to Herman, although this happened at the direction of Judge Takiff. In any event, it was not to be anticipated that Herman had agreed in advance to any proposal Martin would submit, regardless of its terms.

In Essner v. Shoemaker, 393 Pa. 422, 425, 143 A.2d 364 (1958), our Supreme Court said:

"It is understandable when, after a prolonged period of negotiations, parties appear to reach agreement on the essential terms of an important transaction, one of them might believe that a con-

tract had been made. However, before preliminary negotiations ripen into contractual obligations, there must be manifested mutual assent to the terms of a bargain . . . And, if the parties themselves contemplate that their agreement cannot be considered complete, and its terms assented to, before it is reduced to writing, no contract exists until the execution of the writing."

The court finds that the discussions before Judge Takiff never got beyond the stage of negotiations and that no settlement agreement was reached.

This leaves the solution to the impasse entirely in the hands of the court. We must, therefore, fashion a solution which will be fair and equitable to both sides and result in a maximum realization of the proceeds of the liquidation: Ellis v. Ellis supra.

The court has the authority to appoint a receiver for the purposes indicated above: Ellis v. Ellis, supra; Weissman v. Henkin, supra. Whether it should do so is a matter for serious consideration in view of the expenses and delays incident to a receivership. As set forth in Slemmer's Appeal, 58 Pa. 168, 178 (1868):

"In making such a decree [of dissolution] the court will consider not merely the terms of the express contract between the partners, but also the duties and obligations implied in every partnership contract. . . . Where a valuable business has grown up by the joint labors and contributions of all, the court should be careful to preserve it if possible, and to put all the parties upon a fair and equal footing in competing for it. To appoint a receiver, to direct a sale of the whole and winding up of the business would destroy its value without benefiting either party."

In the present case, much testimony was pre-

sented concerning the best method of liquidation. From that testimony, the court concludes that a going-out-of-business sale would require the appointment of a receiver with the accompanying expense and delay. Such a sale would require extensive and expensive advertising, salaries of employes would continue as would overhead; there would remain the problem of disposing of residuals; real estate would have to be disposed of at a forced sale by auction. To this must be added compensation to, and the expenses of, the receiver, his counsel and possibly an accountant. The evidence was that such a going-out-of-business sale could not be concluded in less than 90 days, and in the case of the real estate probably much longer.

Here, we have a profitable business which, with its predecessor, has been built up over a period of some 28 years by the efforts of both partners. As observed in Slemmer's Appeal, supra, to direct its liquidation "would destroy its value without benefiting either party."

The evidence clearly indicates that the maximum value of the partnership can be realized by a closed sale between the partners, because this can be done by the court without the intervention of a receiver. Cf. Slemmer's Appeal, supra; Ellis v. Ellis, supra. Such a sale will be expeditious, with an absolute minimum of expense, and potentially would result in the greatest amount of proceeds.

The final question to be determined is whether the purchaser at the closed auction between the partners may include the right to use the name "Three Brothers" and "Showcase One, Inc." Section 10(b) of the partnership agreement provides, in pertinent part, that following a liquidation of the partnership:

". . . neither Partner, without the consent of the other, shall have the right to use the name 'Three Brothers' or other names or designations used by the partnership prior to such lifetime termination."

A similar problem was considered by our Supreme Court in O'Donnell v. McLoughlin, supra, where the partners were, as here, irreconcilably estranged. The court below decreed that the receiver for the partnership sell the partnership business to the high bidder between the partners as a going concern, including goodwill, and, failing such a sale, to proceed to a dissolution of the partnership. One section of the partnership agreement provided:

"In the event of the dissolution of said partnership, the good will of the business shall not be considered a part of the capital effects of the partnership and shall not be sold, but each partner shall be at liberty to commence and carry on a similar business in his own or other name not similar to nor identical with the name of the firm."

In ruling that the sale of the partnership assets should exclude the goodwill and firm name of the business, the court declared:

"In the absence of a countervailing prohibition of the law or the intervening rights of third persons, the provisions of such a contract is the law of the partnership between the partners."

Accordingly, this court rules that, unless the partners agree otherwise, the sale of the assets of the partnership shall not include the names Three Brothers or Showcase One, Inc.

The court finds that the most expeditious and least expensive method of liquidating the partnership, and the fairest one to both partners, and the

one most likely to bring the greatest return, is a lump sum sale of all the partnership assets, for a cash price, in a closed auction between the parties themselves, with the successful partner assuming full responsibility for the obligations of the partnership. The names Three Brothers and Showcase One, Inc. shall be considered a partnership asset only if both Herman and Martin agree.

The court finds no reason to saddle the partners with the costs of a receivership. Accordingly, the court will supervise the sale: Ellis v. Ellis, supra.

In the event neither partner participates in such a sale, then the court will appoint a receiver to conduct the liquidation by means of a going-out-of-business sale, followed by sale of the partnership real estate.

## CONCLUSIONS OF LAW

1. The court has jurisdiction over the parties and the subject matter.

2. The court has jurisdiction to order a dissolution of the partnership of Three Brothers.

3. The partnership agreement, insofar as it relates to the method of liquidating the partnership business, is incapable of performance.

4. The court has the power to order a lump sum sale of all the partnership assets, for a cash price, in a closed auction between the parties, with the successful partner assuming full responsibility for the obligations of the partnership.

5. In the sale of the assets, the names "Three Brothers" and "Showcase One, Inc." shall be considered a partnership asset only if both Herman Eisenberg and Martin Eisenberg both agree.

6. The court has the power to supervise the sale

of the partnership assets in the manner set forth in paragraph 4.

7. In the event neither partner participates in the sale, as set forth in paragraph 4, the court has the power to appoint a receiver to conduct the liquidation by means of a going-out-of-business sale, followed by the sale of the partnership real estate.

Counsel for Herman Einsenberg and Martin Eisenberg shall each submit a proposed form of a decree nisi, including specific details, consistent with this opinion, within 20 days from this date.

## ORDER

And now, May 3, 1976, it is hereby ordered and decreed that the motion of plaintiff, Martin Eisenberg, to compel compliance with settlement of litigation is denied.