Harold J. Crawford, J.
Motion by plaintiff and cross motion by defendants for summary judgment.
The pleadings may be briefly summarized. Plaintiff alleges in a single cause of action that on or about January 15, 1958 he and the defendants formed a copartnership for the purpose of erecting two apartment houses in this county under a partnership agreement which is annexed to and made part of the complaint. That agreement, plaintiff further alleges, was not for a definite term and was, therefore, one at will. On or about June 21, 1961 plaintiff gave defendants written notice of his election to terminate and dissolve the partnership. Plaintiff demands judgment that the partnership be dissolved, that a *238 receiver be appointed, and that, after payment of the just debts of the partnership and the costs and disbursements of this action and the receivership, the residue be divided among the parties according to their respective rights. • •
The answer consists of general denials, and an affirmative defense and counterclaim pleaded as one. The sum and substance of the latter is that the partnership was not terminable at will, that plaintiff’s notice of termination and dissolution of June 21,1961 was a breach of the agreement and that plaintiff’s remedy was to follow the procedure provided in paragraph 14 of the agreement for the withdrawal of a partner. It is also alleged that “ it is not reasonably practicable to carry on the business of the parties in partnership with the plaintiff.” Defendants pray for a judgment that the complaint be dismissed, that the partnership be dissolved, that they be permitted to continue the business of the partnership in accordance with the terms of the agreement, that the value of plaintiff’s interest be determined in accordance with paragraph 14 of the agreement and plaintiff be paid that amount, less the damages sustained by defendants because of his breach.
Plaintiff’s reply consists of general and specific denials and a prayer that the counterclaim be dismissed.
The substance of plaintiff’s moving affidavit is as follows: He has been engaged in the masonry construction business for almost three decades. Long prior to the formation of this partnership in 1958, he had known and dealt with both of the defendants. Defendant Irving Domnitch (hereinafter referred to as Irving) is a builder and his brother, defendant Harold Domnitch (hereinafter referred to as Harold), is an attorney licensed to practice law in this State.
Irving and the plaintiff owned two parcels of land located in this county. Harold had represented them in the purchase of those properties. In January of 1958 a partnership consisting of the plaintiff and both defendants was formed to exploit those parcels by building apartment houses thereon, one on each. Harold drew all of the instruments necessary to carry out their purposes, including the partnership agreement attached to and made part of the complaint and identified as Exhibit “ A ”, and acted as sole attorney for all of the parties. While defendants refer in their answer to an earlier agreement than that annexed to the complaint, it is undisputed that since November, 1959 the sole articles of partnership are contained in said Exhibit11 A ”. Both agreements were signed by plaintiff in reliance on Harold as attorney for all of the parties.
*239 The purpose of the partnership agreement, continues the plaintiff, was to erect two apartment houses. Those houses were completed and rented long before plaintiff gave his notice of dissolution. Since the partnership agreement states no term, it is one at will and may be dissolved by any partner upon proper notice. In June of 1961 plaintiff no longer wished the partnership to continue and demanded its dissolution.
In the affidavit submitted in support of the cross motion and in opposition to plaintiff’s motion, Irving states in substance as follows: The written instruments speak for themselves. He and the plaintiff had participated in several real estate ventures prior to December, 1957. In each instance, there was an agreement in writing which was prepared by an attorney of Irving’s choice. However, in each instance, before plaintiff signed the agreement, he took a copy away with him and signed it after some interval of time. It was Irving’s impression that in each instance plaintiff consulted an attorney who advised him concerning the contents of the papers. A permanent certificate of occupancy was issued for one building on October 13, 1959, and for the other on October 23, 1959. The agreement, states Irving, was not terminable at will. Plaintiff’s election to terminate and dissolve the partnership was therefore ineffective and his sole remedy was to proceed under the withdrawal provisions of the partnership agreement.
In his reply affidavit, plaintiff reiterates that Harold acted as sole attorney for plaintiff and the other parties, including himself, and that no denial of that fact is forthcoming from Harold.
Both in their papers, especially in their memoranda of law, and at a conference held in chambers on Friday, March 2, 1962, the parties insisted that no triable issue exists and that the sole question presented is one of law, to wit, the construction of Exhibit “A ”, the agreement annexed to and made part of the complaint. Unanimity of the parties on that point is not conclusive (see R. M. & B., Inc., v. R. G. S. Realty Corp., 28 Misc 2d 679 [App. Term, 1st Dept.]; cf. Civ. Prac. Act, § 457-a, subd. 2), but the court agrees that this controversy may be disposed of without a trial of the substantive question involved although it has reached that conclusion via a route somewhat different than any of those urged by the parties.
The agreement provides in pertinent part as follows:
whereas, the parties hereto have acquired title to two parcels of land located on 41st , Avenue between 79th Street and 81st Street, in Jackson Heights, New York; and
*240 whereas, the parties desire to erect two apartment houses, one on each parcel; and
whereas, the parties hereto desire, in connection therewith to state and define their respective rights, duties and obligations towards each other.
• * *
2. irving, nate [the plaintiff], and harold hereby agree to contribute whatever monies that may be needed to the partnership in order to build the building contemplated by the agreement.
3. * * '* It is agreed that irving has 45%, nate has 45% and harold has 10% of this venture. The cash profits are to be distributed as follows: irving is to receive the first $25,000.00 of the cash profits for the first four (4) years, commencing in the year 1961 and continuing until 1965.
ft e *
5. Each party agrees to lend his name, signature and his credit towards and for the purpose of borrowing funds which may be necessary to continue with the joint venture.
* * *
8. In the event that it shall be found to be advisable for the benefit of the parties hereto to organize a corporation or corporations to construct the contemplated building and/or to own the same and/or to manage and operate the building or the joint venture, that then and in such event, irving is to have 51% of the stock and be in full control of the venture [sic], but in any event the profits will be distributed as set forth in Paragraph No. 3 of this agreement.
« ft *
12. Notwithstanding anything to the contrary herein, should two partners desire to sell, the third partner agrees to consent to the sale. The third partner further agrees to sign any and all papers that may be necessary to carry out the intent of this agreement. The only time the third party will be able to interfere with this arrangement is if the sale is not being made in good faith.
13. The death of one of the partners hereto shall not terminate this partnership agreement. * * *
14. In the event one of the parties hereto desires to withdraw from the venture herein, he must first offer his interest to the remaining partners.
• a *
19. The parties hereto mutually agree that for the year 1958, Harold Domniteh is to receive $5,000.00; for the year 1959, Harold Domniteh is to receive $10,000.00 as reimbursement for expenses incurred in running the office of the partnership. For the year 1960 and thereafter, so long as the parties hereto own the buildings which are being constructed, Harold Domniteh is to receive $15,000.00. This money is to be applied towards office expenses. All legal fees and management fees for the running and operation of these buildings contemplated to be constructed are to be paid out of this sum. * * *. (Emphasis supplied.)
Although the parties refer to themselves as partners, it may be observed, preliminarily, that in one breath the agreement describes their association as a partnership and in another as a joint venture. Since it has been said, however, that “ A joint adventure is subject to exactly the same rules as a technical partnership ” (Hardin v. Robinson, 178 App. Div. 724, 729, *241 affd. 223 N. Y. 651; see, also, Zeibak v. Nasser, 12 Cal. 2d 1, 12) and that “ Generally speaking, the principles of the law of partnership apply, at least by analogy ” (Conway, the New York Fiduciary Concept in Incorporated Partnerships and Joint Ventures, 30 Fordham L. Rev. 297, n. 2; see, also, 1 Rowley, Partnership [2d ed.], p. 39), and since the basic elements of a partnership, except perhaps for limitation in scope, exist (Partnership Law, § 10, subd. 1; § 11), the court will treat the parties as partners and determine their rights and duties under the Partnership Law (see Haxton & Son v. Rich, 267 App. Div. 492, 495; Zeibak v. Nasser, supra).
In the construction of all agreements the search is for the substantial intention of the parties (Madawick Contr. Co. v. Travelers Ins. Co., 307 N. Y. 111, 119). If the agreement is unambiguous, construction is a question of law for the court (Nichols v. Nichols, 306 N. Y. 490, 496). If the agreement is ambiguous, construction is a mixed question of law and fact (Kenyon v. Knights Templar & Masonic Mut. Aid Assn., 122 N. Y. 247, 254; Lachs v. Fidelity & Cas. Co. of N. Y., 306 N. Y. 357, 364; Dowdle v. Richards, 2 A D 2d 486, 493). Where there is ambiguity, however, any fair doubt as to the meaning of words used should be resolved against the party who prepared the agreement (Rentways, Inc., v. O’Neill Milk & Cream Co., 308 N. Y. 342, 348). Since there are no “ special rules of law applicable to covenants contained in partnership articles ’ ’ (Bagley v. Smith, 10 N. Y. 489, 495), the above-mentioned rules of construction apply to the agreement which underlies the dispute before the court.
Plaintiff contends that the agreement is one at will or at most one for the erection of the apartment houses in question and they have been erected. Defendants contend that the partnership was not one at will, but one for a definite term, i.e., until the partnership property was sold in good faith upon the agreement of two of the partners, and in the interim the property was to be operated and managed subject to the right of any partner to withdraw under paragraph 14 of the agreement.
Reading the agreement as a whole and resolving any fair doubt as to the meaning of the words used against the defendants, the court believes that the intention of the parties is to be found somewhere between those alternatives. While unnecessary to the result to be reached, as will subsequently appear, the court will set forth its interpretation of the agreement as to duration.
The agreement plainly was neither one at will nor for a definite term. It was, however, one for a particular undertaking. *242 It contemplated, at the very least, that the partnership was to continue until the buildings were erected and, of course, sold. But when were the buildings to be sold?
The parties’ expressed desire at the very beginning of the agreement was “ to erect ” two apartment houses. Money was to be contributed to the partnership in order “ to build ” the buildings “ contemplated by the agreement”. A sale, however, was necessarily contemplated and it was, perhaps, in apparent recognition that time might well elapse between construction and sale, that the parties inserted provisions bearing upon management, the share of profits Irving was to receive “ commencing in the year 1961 and continuing until 1965 ” and the amounts Harold was to receive for 1958, 1959, 1960 ‘ ‘ and thereafter, so long as the parties hereto own the buildings which are being constructed”. The provision that “ should two partners desire to sell, the third partner agrees to consent to the sale ” (par. 12) does not require the construction urged by the defendants. It may just as reasonably be argued that said provision was inserted merely to prevent one partner from arbitrarily frustrating the consummation of a sale sought to be made by the majority in good faith, and not to empower the majority arbitrarily to postpone the sale ad infinitum.
It must, of course, be noted that Exhibit “A ”, although dated January, 1958, was admittedly executed in November, 1959, after the buildings had been erected and certificates of occupancy issued. That fact, in addition to the provisions of paragraphs 3, 8,12 and 19, may be interpreted as urged by defendants. Since, however, the construction advanced above also seems reasonable, ambiguity must be held to exist as to the term of this partnership. Resolving that ambiguity in favor of the plaintiff would lead to the conclusion that this partnership was to endure until the buildings were erected and sold, but that they were to be sold, at the latest, within a reasonable time after they were erected. In other words, construction and sale of the buildings were the primary purposes of this partnership, not their operation and management. Whether a reasonable time within which to sell had expired when plaintiff gave notice of his election “ to dissolve ” the partnership presents, on the papers before the court, an issue of fact.
Resolution of that issue is not, however, required. The rules for determining the rights and duties of partners is, by section 40 of the Partnership Law, expressly made “ subject to any agreement between them”. (See, also, §§ 41, 71, 73.) Our Court of Appeals has held that “ The rights and obligations of *243 the partners as between themselves arise from and are fixed by their agreement.” (Corr v. Hoffman, 256 N. Y. 254, 272.) And the Supreme Court of Pennsylvania has aptly referred to a partnership agreement as the ‘ ‘ mutually established ‘ law of the partnership.’ ” (O’Donnell v. McLoughlin, 386 Pa. 187, 193.)
The controlling provision in the agreement here involved is contained in paragraph 14, the first sentence of which was quoted above but which is now set forth at somewhat greater length.
14. In the event one of the parties hereto desires to withdraw from the venture herein, he must first offer his interest to the remaining partners. Said offer shall be in writing advising the remaining partners of his intention to sell and giving the remaining partners thirty (30) days in which to exercise their option. In the event a figure cannot be agreed upon between the parties hereto, then in that event, an appraiser shall be appointed as heretofore stated in case of death of one of the parties hereto. After said figure is agreed upon and the figure is adjusted to the assets and liabilities of the partnership at the time this figure is agreed upon, the remaining parties will pay 5% of the agreed figure and the balance in sixty (60) equal monthly installments until said price is paid. The indebtedness will be in the form of promissory notes, series in form, and personally signed by the remaining partners.
[The manner in which the value of the “ retiring ” partner’s interest is to be determined is then set forth.]
In the event the remaining partners do not desire to purchase the interest of the partner that desires to sell, the party desiring to sell, may sell his interest to a third party.
In the opinion of this court plaintiff is bound by that covenant whether the partnership was originally one at will or for a particular undertaking and whatever that undertaking might be. If the partnership weré from its inception one at will, it could hardly be argued, with reason, that the plaintiff was bound by every other covenant in the agreement except that contained in paragraph 14. So, too, if the partnership were for a particular undertaking which had not taken place prior to the time that plaintiff served his notice “ to dissolve ” the partnership. Now assuming that the particular undertaking for which the partnership had been formed was the erection of the buildings and their sale within a reasonable time thereafter and that more than a reasonable time had elapsed before plaintiff served his notice, the fact remains that neither the partnership nor the agreement necessarily came to an end at that time.
Subdivision 1 of section 45 of the Partnership Law provides that “ When a partnership for a fixed term or particular undertaking is continued after the termination of such term or particular undertaking without any express agreement, the rights and duties of the partners remain the same as they were at such termination, so far as is consistent with a partnership at will.” *244 And the Court of Appeals has held that -‘ ‘ A right conferred upon one partner by written contract to purchase the partnership business at the termination or expiration of the partnership is applicable to and consistent with a partnership a/t will”, notwithstanding that such right was, under said contract, to be exercised only if defendant “ should so desire ‘ before the end of the term ’ of the contract ” (Corr v. Hoffman, 256 N. Y. 254, 273, supra [emphasis in original]). “Even if that limitation of time had not been expressed in the original contract, it must have been read into the contract by necessary implication, for all rights and obligations of the partners expired with the end of the term of the partnership ” (id., pp. 273-274).
It seems clear that paragraph 14 of the partnership agreement in the instant case is “ applicable to and consistent with a partnership at will.” Plaintiff was, therefore, bound by it. Being bound by it, his unequivocal notice of election “ to dissolve ” the partnership followed by the institution of this action to enforce his alleged right to do so constituted a breach of the agreement. (Cf. Gerstein v. Teitelbaum, 273 App. Div. 886.) Having breached the agreement, he is not entitled to a decree of dissolution (Partnership Law, § 63, subd. 1, par. [d]; § 69; 1 Bowley, Partnership [2d ed.], p. 618; cf. Partnership Law, § 62).
Left for consideration, before determining whether defendants are entitled to such a decree, and if so its extent, is plaintiff’s charge that Harold acted as attorney for himself, his brother Irving, and the plaintiff and that it was, for that reason alone, incumbent upon Harold to show that the agreement was fair and reasonable and fully understood by plaintiff. Plaintiff does not state that he did not know that defendants were brothers and Harold an attorney. Plaintiff does not charge either of the defendants with fraud or misrepresentation or duress. He does not state that the agreement did not contain the provisions actually agreed upon or that he did not understand them. He does not deny that he took a copy of the contract with him before he signed it; and, as to Irving’s statement that it was his impression that plaintiff consulted an attorney to advise him regarding the contents of the contract, plaintiff replies that he (referring to Irving) “ sees fit to refer to the fact that I had the temerity to read the contracts prepared by his brother before I signed them ’ ’. That is hardly the equivalent of a flat statement that plaintiff did not have the benefit of independent counsel.
The only charge here, simply stated, is that Harold, an attorney, represented himself, his brother and plaintiff (a businessman with some 30 years ’ experience) in drawing the commercial *245 contract in question. It would, in the opinion of this court, be most unrealistic to apply cases such as Matter of Howell (215 N. Y. 466); Matter of Putnam (257 N. Y. 140); Frost v. Bachman (259 App. Div. 745, affd. 283 N. Y. 744) and Matter of Schanzer (7 A D 2d 275, affd. 8 N Y 2d 972) to this situation. The entire setting of the underlying transaction belies the existence between plaintiff and Harold of a true attorney and client relationship such as existed in those cases. Under such circumstances, and in view of the ground upon which this decision is based, it is difficult to see how an affidavit from Harold would have served any useful purpose.
Where found, ambiguity in the agreement has been resolved in favor of the plaintiff. It is one thing, however, to resolve fair doubt as to the meaning of words against those who have used them (Rentways, Inc., v. O’Neill Milk & Cream Co., 308 N. Y. 342, 348, supra); it is quite another to rewrite a contract under such guise.
In the opinion of this court, defendants are entitled to a decree of dissolution. Plaintiff is, of course, entitled to be paid the value of his interest in the partnership, less the damages, if any, caused by his breach of the partnership agreement. The question is whether he must be paid in accordance with the formula set forth in paragraph 14 or in the manner provided by section 69 of the Partnership Law. The court believes that section 69 controls.
The parties could have provided for the manner in which their respective shares in the partnership were to be paid upon dissolution. (Lanier v. Bowdoin, 282 N. Y. 32; O’Donnell v. McLoughlin, 386 Pa. 187, supra.) But this they did not do. Paragraph 14 apparently contemplated that the withdrawal of a partner was not to effect a dissolution of the partnership. The soundness of this construction is fortified when paragraph 14 is read together with paragraph 13 which expressly provided that ‘1 The death of one of the partners hereto shall not terminate this partnership agreement.” Perhaps paragraph 14 is ambiguous in this respect, but if it is, such ambiguity, too, must be resolved in favor of the plaintiff and in paragraph 3 of the prayer for relief in his complaint he apparently seeks immediate payment of his entire share rather than payment by installment as provided in paragraph 14 of the agreement.
Defendants are, therefore, entitled to a decree of dissolution granting them the rights conferred by subdivision 2 (pars, [a], [b]) of section 69 of the Partnership Law. Ascertainment of the value of plaintiff’s share and of the damages, if any, caused by his breach of the partnership agreement are respectfully *246 referred to an Official Referee to hear and report unless the parties consent that the reference he to hear and determine with the consequent appreciable saving of time and expense.
Accordingly, plaintiff’s motion is denied and defendants’ cross motion is granted to the extent indicated. '