Thomas Browne FOSTER, Plaintiff,

v.

The UNITED STATES of America,
Defendant.

United States District Court
S. D. New York.

June 25, 1963.

Peter J. George, New York City, for plaintiff.

Robert M. Morgenthau, U. S. Atty., John Paul Reiner, Asst. U. S. Atty., of counsel, for defendant.

LEVET, District Judge.

This is a suit to recover refunds of federal income taxes erroneously paid for the taxable years 1953, 1954 and 1955. The claims of plaintiff are based upon the assertion that he was a non-resident for the required period and earned his income as a salary from the partnership Emerson Engineers of which he was a partner. Defendant asserts that plaintiff's income for the respective years was derived as his partnership interest in Emerson Engineers. Jurisdiction is conferred upon this court by Title 28 U.S.C. § 1346. The case was tried to the court.

After hearing the testimony of the parties, examining the exhibits, the pleadings, the briefs and the proposed findings of fact and conclusions of law submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. During the entire taxable years of 1953, 1954 and 1955 the plaintiff was a partner, and not an employee, of Emerson Engineers, a partnership situated in New York, New York.

2. The partnership agreement (Ex. 1) provides that "the partners shall devote all of their time and attention to the affairs of the co-partnership." (Par. Fifth)

3. Plaintiff became a non-resident of the United States on January 10, 1952 and remained a non-resident until July 29, 1956. He was a non-resident for the entire taxable years 1953, 1954 and 1955, being a non-resident for the requisite period of 510 days duration in 18 consecutive months for each taxable year.

4. Emerson Engineers had a contract with Arabian American Oil Co. (Aramco) to provide management consulting services in Saudi Arabia. The contract provided for Emerson Engineers to send monthly statements to Aramco for the services of the firm. The billings were in the firm name and Foster received no sum directly from Aramco. All sums received by Foster were through the firm. The plaintiff, as a partner, represented the partnership in Saudi Arabia during 1953, 1954 and 1955. Mr. Sloane, a senior partner, made periodic business trips to Saudi Arabia and reviewed the firm's work for Aramco with Foster.

5. Under the partnership agreement it was provided that "Thomas B. Foster shall be entitled to 4.0816 of the profits and shall bear 4.0816 of the losses * *." On December 1, 1950, when plaintiff became a partner, he contributed capital to the partnership in proportion to his partnership interest.

6. Paragraph marked "Twelfth" of the partnership agreement (Ex. 1) provided that: "Each partner shall be entitled to a monthly drawing account, the amount of which shall be determined and fixed by the majority in interest of all the partners, and shall further be entitled to a distributive share of the ordinary net income based upon his percentage interest of the profits."

7. Payroll sheets, such as Pl. Ex. 3, show Foster as a partner and receiving a monthly drawing, whereas "employees" are shown on a separate sheet as receiving salaries less deductions for WT (withholding) and F.I.C. (social security), not shown on the listing of Foster on the Partners Sheet. In addition to his monthly drawings, plaintiff received a distributive share of the net profits for the taxable years 1953, 1954 and 1955.

8. There is no evidence that the monthly drawings made to plaintiff during the years 1953, 1954 and 1955 were intended by the partnership to be guaranteed payments, without regard to partnership income.

9. Although some of the associates received salaries in excess of those of plaintiff, a partner, none of the associates either contributed to capital or shared in the net profits or losses.

10. During 1953, Emerson Engineers earned 59.4789% of its income from sources outside the United States. Plaintiff's income for the year 1953 was $17,458.00, consisting of "a drawing of a fixed amount" in the sum of $9,840.00, and his distributive share of the partnership profits for the year 1953 (at the

rate of 4.0816%), totalling $7,618.00, less $1,000.00 credit for capital loss. The District Director allowed $10,383.83 (59.-4789% of $17,458.00) as income earned outside the United States.

11. During 1954 Emerson Engineers earned 27.289% of its income from sources outside the United States. Plaintiff's income for the year 1954 was $10,167.41, consisting of "a drawing of a fixed amount" in the sum of $9,305.80, and his distributive share of the net partnership profits after all expenses, employees' salaries and partnership drawings for the year 1954 (at the rate of 4.0816%) totalled $861.61. The District Director allowed $2,834.07 (27.289% of $10,167.41) as excluded from gross income as earned outside the United States.

12. The plaintiff filed his tax return for 1955 on May 4, 1956 and a claim for refund on May 21, 1959. (Deft. Ex. B; Pl. Ex. 11)

## DISCUSSION

The difference between the parties in the computation of the tax due resolves itself to this: Plaintiff seeks to exclude all of his monthly drawings plus a percentage of his year-end distribution of profits from gross income. Defendant allows only a percentage of the sum of both his monthly drawing and his year-end share of the profits. Plaintiff's contention is that the monthly amounts received by him were either salary or guaranteed payments and thus are totally excludable as income "from sources without the United States." Defendant contends that plaintiff was a partner and as such shared in the partnership profits and is permitted to exclude only that portion of his total income which represents the percentage of income received by the partnership from sources outside the United States.

The basic statutes involved are Section 116(a), Int.Rev.Code of 1939, governing the tax year 1953, and Section 911, Int.Rev.Code of 1954, governing the tax years 1954 and 1955. For the present purposes, the statutes may be considered identical as they existed for these years and essentially they exclude from taxation income earned from sources without the United States by individuals who are either bona fide residents of a foreign country or have been physically present in a foreign country for 17 of 18 consecutive months. "Earned income" is statutorily defined as "wages, salaries, professional fees * * * received as compensation for personal services actually rendered," Int.Rev.Code of 1939, § 116(a)(3); Int.Rev.Code of 1954, § 911(b). Income "from sources without the United States" is statutorily defined to include compensation for labor or personal services rendered outside the United States. Int.Rev.Code of 1954, § 862(a)(3).

The issue in this case resolves itself into determining the nature of the payments to Foster. If they were, in fact, a salary or its equivalent, they are totally excludable under the appropriate statutes as income earned from sources without the United States. If they were, in fact, distributions of partnership profits, then only that portion of them which corresponds to the percentage of the total partnership income which arose from sources outside the United States is excluded.

It is, of course, elementary that a taxpayer, claiming that income was exempt from income taxes in the United States, has the burden of proof. Seeley v. Commissioner, 186 F.2d 541 (2 Cir., 1951). There is no question but that Foster was a non-resident under the statutory definition for the taxable years. But in order to prevail here he must show that he was an employee, rather than a partner, as to income from 1953, and an employee or a partner with a guaranteed salary for the 1954 and 1955 period.

Whether plaintiff is a partner or an employee is a question of fact. The partners' relationships are basically subject to the laws of the State of New York. Section 10 of the Partnership Law of this state provides in subdivision 1: "A partnership is an association of two or more persons to carry on as co-owners a business for profit." It would seem

basic that a partnership agreement is superior to that of any alleged employment contract. (Keen v. Jason, 19 Misc. 2d 538, 187 N.Y.S.2d 825, 828 (Sup.Ct. 1959), aff'd 11 A.D.2d 1039, 207 N.Y.S. 2d 1001 (1960). See also Napoli v. Domnitch, 34 Misc.2d 237, 226 N.Y.S. 2d 908 (Sup.Ct.), modified 18 A.D.2d 707, 236 N.Y.S.2d 549 (1962)) It is also noteworthy that subdivision 6 of Section 40 of the Partnership Law provides that "[n]o partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs."

In the partnership agreement (Ex. 1) Foster and the other parties agreed to become co-partners. Each partner was to be entitled to a monthly drawing account. (Id. at Par. Fourth) As a partner, Foster was entitled to share in the partnership profits and was required to bear its losses. At no place in the partnership agreement was a partner guaranteed a salary within the meaning of Section 707(c) of the Int.Rev.Code of 1954, 26 U.S.C. § 707(c). Furthermore, no confirmed policy to this effect was established at the trial.

■ Foster's activities in Saudi Arabia were those of a partner and not those of an employee of the partnership. Foster's ultimate share of the income of the partnership depended not only on the return from the Aramco project, but on the money earned by the firm in various parts of the world. Foster received no sums directly from Aramco. All sums were paid to Foster through the partnership.

This case as to the 1953 earnings at least is controlled by the principles set forth in Lawrence L. Tweedy, 47 B.T.A. 341 (1942), where a similar situation existed. The mere fact that Foster and his firm may designate his receipts as "salary" or "compensation" does not alter the fact that such payments were in reality either profits or anticipated profits. See also Karl Pauli, 11 B.T.A. 784 (1928); Estate of S. U. Tilton, 8 B.T.A.

914 (1927). Even if the so-called salaries should be payable whether or not there are earnings, the absence of earnings would cause the partnership to operate at a loss and as a consequence Foster would have had to make up his share of the losses. What Foster received was a part of his share of the firm's net profits, however those profits were designated. Foster cannot be both employer and employee. Ingenious fiscal terminology is insufficient to transform a partnership drawing into an employee's recompense.

Foster's refund claims for the years 1954 and 1955 are entitled to no different treatment than the claim for the year 1953. Section 707(c) of the Int.Rev.Code of 1954 (26 U.S.C. § 707(c)), on which plaintiff relies, is as follows:

"§ 707. Transactions between partner and partnership

\* \* \* \* \* \*

"(c) Guaranteed payments.—To the extent determined without regard to the income of the partnership, payments to a partner for services or the use of capital shall be considered as made to one who is not a member of the partnership, but only for the purposes of section 61(a) (relating to gross income) and section 162(a) (relating to trade or business expenses). Aug. 16, 1954, 9:45 a. m., E.D.T., c. 736, 68A Stat. 243."

Subdivision (a) of the same section reads:

"(a) Partner not acting in capacity as partner.—If a partner engages in a transaction with a partnership other than in his capacity as a member of such partnership, the transaction shall, except as otherwise provided in this section, be considered as occurring between the partnership and one who is not a partner."

As to legislative history, the Committee Report from the House on Section 707(c) stated:

"Subsection (c) provides a rule with respect to guaranteed salaries

to members of a partnership. A partner who renders services to the partnership for a fixed salary, payable without regard to partnership income, shall be treated to the extent of such amount like any other employee who is not a partner, and the partnership shall be allowed a deduction for salary expense. The amount of such salary shall be included in the partner's gross income, and shall not be considered a distributive share of partnership income or gain. A partner who is guaranteed a minimum annual amount for his services shall be treated as receiving a salary in that amount."

(See U.S.Code Congressional and Administrative News, 83rd Cong., 2d Sess., 1954, p. 4367)

The report of the Senate Committee was similar (Id. at 5029):

"Subsection (c) provides a rule with respect to guaranteed payments to members of a partnership. A partner who renders services to the partnership for a fixed salary, payable without regard to partnership income, shall be treated, to the extent of such amount, as one who is not a partner, and the partnership shall be allowed a deduction for a business expense. The amount of such payment shall be included in the partner's gross income, and shall not be considered a distributive share of partnership income or gain. A partner who is guaranteed a minimum annual amount for his services shall be treated as receiving a fixed payment in that amount.

"The House provisions were amended by your committee to accord the same treatment as that provided in the case of guaranteed salaries to payments for the use of capital, to the extent the payments are determined without regard to partnership income. It should be noted that such payments, whether for services or for the use of capital, will be includible in the recipient's return for the taxable year with or within which the partnership year in which the payment was made, or accrued, ends."

The plaintiff claims that his monthly receipts were guaranteed payments within the meaning of Section 707 (c), Int.Rev.Code of 1954. The touchstone for determining "guaranteed payments" is whether they are payable without regard to partnership income, Treas. Reg. § 1.707–1(c) (1956). There is no evidence to support any contention that the payments were to bear no relationship to partnership income. While associates and certain partners were paid the same amount, this appears to be only a matter of convenience. Under the partnership agreement, were there losses, the partners would be required to bear them. Absent the monthly drawing being guaranteed payments, the provisions of Section 911, Int.Rev.Code of 1954, permit an exclusion only for that portion of the plaintiff's total earnings which represent the partnership's income from sources without the United States. This the Commissioner has granted him.

There is no basis for any contention that the plaintiff was not acting in his capacity as partner in Saudi Arabia so as to render applicable Section 707(a), Int.Rev.Code of 1954.

Since the amounts received by Foster during the years 1953 and 1954 were, in fact, distributions of partnership income, he is not entitled to any refund.

The third cause of action, the 1955 claim for refund is barred by the statute of limitations. Foster filed his income tax return on May 4, 1956 and filed his claim for refund over three years later on May 21, 1959. (See Deft.Ex. B and Pl. Ex. 11)

The relevant statute is Title 26 U.S.C. § 6511(a), which reads as follows:

"§ 6511. Limitations on credit or refund

"(a) Period of limitation on filing claim.—Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax

the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. * * * " [1]

There is no doubt that Foster's claim for refund was filed more than three years after the filing of his return. However, he argues that his return was not due until June 15, 1956 by virtue of an extension granted him as a non-resident citizen, and, therefore, his return filed as it was on May 21, 1959, was early and by virtue of the language of Section 6513 "[f]or purposes of section 6511, any return filed before the last day prescribed for the filing thereof shall be considered as filed on such last day," the three-year statute should run from June 15, 1956. What the plaintiff has neglected is a further provision of Section 6513(a), which reads: "For purposes of this subsection, the last day prescribed for filing the return or paying the tax shall be determined without regard to any extension of time granted the taxpayer * * *." Clearly, for purposes of Section 6513, plaintiff's return was due April 15, notwithstanding the automatic extension granted him as a non-resident citizen.

Sections 6511(a) and 6513(a), read together, simply mean that for the purposes of the statute of limitations, a claim for refund must be filed within three years of either the due date (without regard to any extension of time) or the filing date, whichever is later. Under the facts here, three years from the filing date (May 4, 1956) would be the later date. Since plaintiff's claim was not filed within three years from the filing date, it is time barred.[2] The plaintiff's remaining contention that a contrary result is demanded because a non-resident alien's tax return is not due until June 15 (Section 6072(c), Int.Rev.Code of 1954) and a non-resident citizen should not be treated differently, is without merit in view of the express statutory language.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the parties and the subject matter of this suit, 28 U.S.C. § 1346(a).

2. Plaintiff is not entitled to any refund for the tax year 1953. Lawrence L. Tweedy, 47 B.T.A. 341 (1942).

3. Plaintiff is not entitled to any refund for the tax year 1954 since the payments to him were not guaranteed within the meaning of Section 707(c), Int.Rev. Code of 1954.

4. Plaintiff's claim for refund for the tax year 1955 is barred by the statute of limitations, 26 U.S.C. §§ 6511, 6513.

5. Defendant is entitled to a judgment dismissing the complaint on its merits with costs.

Settle judgment on notice.

---

1. Prior to the Technical Amendments Act of 1958 (September 2, 1958, 72 Stat. 1606), Section 6511(a) read in pertinent part: " * * * shall be filed by the taxpayer within 3 years from the time the return was required to be filed (determined without regard to any extension of time) * * * ." Section 82(a) of the Technical Amendments Act (72 Stat. 1663) amended Section 6511(a) by deleting the words "required to be" and "(determined without regard to any extension of time)." The amendment was made retroactive to August 17, 1954 by Section 1(c) 2 of the Act, subject, however, to Section 7851(d) of the Int.Rev.Code of 1954, which provided: " * * * all suits, proceedings, or prosecutions, whether civil or criminal, for causes arising, or acts done or committed, prior to * * * repeal, may be commenced and prosecuted within the same time as if this title had not been enacted." Since the claim for refund was filed after the amendment to Section 6511(a), the amended statute as quoted in the text governs this claim.

2. The same result would occur had the applicable statute been the pre-1958 Section 6511(a).